# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALI ABED** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-3070-LMA-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Ali Abed ("Abed"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and his claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On December 11, 2006, Abed submitted applications for benefits. R. 88-92. He reported that he became disabled on September 1, 2005 from heart blockages with numbness and pain in his legs. R. 88 and 94. On February 21, 2007, the Commissioner denied his claim. R. 57-60. On September 18, 2008, there was a hearing before an Administrative Law Judge ("ALJ"). R. 17-49. He waived his right to representation. R. 87. On October 17, 2008, the ALJ issued an unfavorable decision. R. 5-16. On February 11, 2009, the Appeals Council denied his request for review. R. 1-3.

On March 17, 2009, Abed filed a complaint with this Court. Rec. doc. 1. The parties submitted cross-motions for summary judgment. Rec. doc. 11 and 12. Abed is represented by

counsel in this proceeding.

## STATEMENT OF ISSUES ON APPEAL

Did the ALJ err by failing to find that Abed met the requirements for Listing 4.04(C)-Coronary artery disease?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. Abed met the insured status requirements of the Social Security Act through December 31, 2010.

2. There was no evidence demonstrating that Abed engaged in substantial gainful activity since September 1, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. Abed had the following severe impairments: peripheral arterial disease (PAD); status-post aortobi-iliac bypass with Dacron graft; coronary artery disease (CAD). (20 CFR 404.1520(c); Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) and SSR 96-3p).

4. Abed did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Abed had the residual functional capacity to perform a reduced range of light work. (20 CFR 404.1567(b)).

6. Abed was unable to perform any past relevant work (20 CFR 404.1565).

7. Abed was born in 1952, and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. Abed had at least a high school education and was able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled," whether or not the claimant had transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering Abed's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Abed could

>     perform (20 CFR 404.1560(c) and 404.1566).

11. Abed had not been under a disability, as defined in the Social Security Act, from September 1, 2005, through the date of the decision (20 CFR 404.1520(g)).

R. 10-16.

## ANALYSIS

a. **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864

F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520©, 416.920©.
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

4

Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462. "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b. **Testimony at the Hearing.**

Abed was born in 1952. R. 21. At the time of the hearing he was 56. R. 21. He was about 5'3" tall and weighed about 180 pounds. R. 21. He was married. R. 21. He had a current driver's license. R. 21-22. He completed high school in 1970. R. 22. He could do simple reading, writing, addition and subtraction. R. 23.

From 1992 to 2005, Abed was the owner of a convenience store with a deli/restaurant in the store. R. 23-24. He did the cooking in the deli/restaurant. R. 24. His wife worked in the convenience store with him. R. 24. Other people worked in the store, but there was a high turnover. R. 25. He was responsible for payment of the business taxes and the purchase of supplies and inventory. R. 26. He stopped working in 2005. R. 36.

5

From November 10 through December 4, 2005, Abed was hospitalized at Ochsner, where he underwent a heart catheterization. R. 26-27. A stent was not installed because the blockage was not severe enough. R. 27. Aspirin, Naproxen, Simcor and Plavix were prescribed for him. R. 28. At the time of the hearing he took only Plavix and Simcor. R. 29. When he walked, he experienced shortness of breath and chest pains. R. 29. If he carried anything and climbed steps, he became short of breath. R. 30. With the Simcor and Plavix, his heart condition was relatively stable. R. 30. He went to his cardiologist about every three months. R. 30-31. A stress test was scheduled for October 2008. R. 31.

Abed experienced numbness and pain in his leg when he sat or stood for over fifteen or twenty minutes. R. 33. He had an iliac bypass in 2005 at Ochsner for blockages in his abdomen. R. 33-34. The surgery was successful. R. 35.

Abed tried to walk about a half mile daily. R. 22. Sometimes he could not do it without taking a rest. R. 36. On the hearing date, he parked about three blocks from the hearing and walked. R. 22. During the day, he spent a little time with his grandchildren, watched TV or visited friends. R. 36. His wife did most of the housework. R. 37. He did light housekeeping. R. 37. He cooked as a hobby. R. 37. Sometimes he went to the grocery store with his wife. R. 38. When he did, he was there between thirty and sixty minutes. R. 38. He could get around in Wal-Mart and Sam's if he took his time. R. 38. He went to a mosque. R. 39.

The heaviest item Abed could lift was about thirty pounds but he could not carry it for long. R. 40. He could pick up ten to twenty pounds twice a day. R. 40. He could stand for about twenty to thirty minutes before he had to sit down. R. 40-41. He could sit a little longer before he had to stand. R. 41. Out of an eight hour day, he could stand for four hours and sit for about six hours.

R. 42-43. He had to alternate sitting and standing throughout the day. R. 43.

The vocational expert testified that his past work as owner/manager of a convenience store was medium skilled work. R. 45. His transferable skills included operation of a cash register, record keeping, ordering and customer service. R. 46. With the limitations described in the ALJ's hypothetical question, Abed could not return to his past relevant work. R. 47. He could work as a sedentary cashier or customer service representative. R. 48.

c. **Medical Evidence**.

On September 21, 2005, Abed went to the emergency room at Richardson Regional Medical Center in Texas ("Richardson") for pain in his legs. R. 131. A CT scan of the abdomen and pelvis revealed blockage of the distal abdominal aorta. R. 137-38. There was no evidence of deep venous thrombosis. R. 140. On September 29, 2005, he returned to the Richardson emergency room for a rash on his left leg and numbness and pain in his legs. R. 143.

On October 3, 2005, Abed was seen at Ochsner Clinic Foundation ("Ochsner"). He reported pain in both legs which began before Hurricane Katrina. He was told in Dallas that he had blood clots. R. 192 and 194. The diagnosis was abdominal aortic stenosis and leg claudication. R. 197. He was referred to a vascular surgeon. R. 197. On October 6, 2005, he was seen at Ochsner by the vascular surgeon, Dr. Samuel Money. The diagnosis was occluded aorta with Leri syndrome. He was scheduled for an angiogram on October 21, 2005. R. 180. In preparation for the angiogram, there was no evidence of stress induced myocardial ischemia. R. 160. On October 21, 2005, Dr. Money performed the aortogram with a catheter in the aorta. It was determined that he was suitable for an aorto-bifemoral bypass. R. 187. On November 8, 2005, an aortobi-iliac bypass was performed by Dr. Money. R. 181. He was discharged on November 13, 2008 from Ochsner in

7

stable condition. R. 181-85. He received physical therapy while he was in the hospital. R. 198-207.

On November 22, 2005, the staples were removed. Abed was to return in two weeks to Dr. Money. R. 174. On December 5, 2007, Dr. Money reported that Abed was doing well. He could walk as far as he wanted. He was told to return in six months. R. 173. On January 5, 2006, Dr. Money reported that Abed was doing well except for some musculoskeletal problems. Aleve was prescribed for two weeks. R. 170.

On January 25, 2006, Abed was seen by Dr. Homeyar Dinshaw[2] for hypercholesterolemia. R. 167. Medication was prescribed. R. 168. He was to return in six months. R. 169. On October 26, 2006, he was seen at Ochsner for itching all over the body. Medication was prescribed. R. 188-89. The diagnosis was hives. R. 190.

On November 13, 2006, he was seen at Ochsner for peripheral artery disease ("PAD") and hypercholesterolemia. He had stopped taking Lipitor a few months before, he was smoking, and he was not exercising. R. 164. Dr. Dinshaw prescribed exercise, tobacco counseling, and an aortic ultrasound. R. 166. The ultrasound did not present any evidence of an abdominal aortic aneurysm. R. 158. An EKG was positive for ischemia at a high workload. The test suggested an intermediate probability for future cardiovascular events. R. 156-57. The stress test was considered abnormal. R. 161. On December 4, 2006, a left heart catheterization was performed. The result was non-obstructive coronary artery disease and elevated left ventricular end-diastolic pressure ("LVEDP"). Routine post-catheterization care was recommended along with medical treatment for PAD and elevated LVEDP. R. 155.

On February 16, 2007, Gary Carroll, M.D., an internist, performed a Doppler blood pressure

---

[2] Dr. Dinshaw's speciality is not identified.

test on Abed. R. 149-52. On February 19, 2007, a medical consultant for the Commissioner completed a physical residual functional capacity assessment with some exertional limitations. R. 211-18.

On October 19, 2007, Abed was examined by Dr. Miljana Mandich, an internist, at the request of the Commissioner. Dr Mandich found that Abed ambulated without any difficulty and without the use of a cane, his blood pressure was 120/76, there was no history of high blood pressure, and the examination, including the cardiovascular examination, was unremarkable. R. 219-34.

d. **Plaintiff's Appeal.**

<u>Issue</u>. Did the ALJ err by failing to find that Abed met the requirements for Listing 4.04(C)- Coronary artery disease?

Abed contends that he met the listing requirements for coronary artery disease because of: (a) the blockage found as a result of the December 4, 2006 left heart catheterization; and (b) his description of his difficulty walking. The Commissioner contends that there is substantial evidence to support the ALJ's finding that Abed did not meet the requirements for Listing 4.04(C).

Section 4.00 of 20 C.F.R. part 404, subpart P, app. 1 is concerned with the cardiovascular system. Section 4.04 relates to ischemic heart disease.[3] Abed was required to demonstrate:

---

[3] The pertinent part of Section 4.04 is as follows:

4.04 *Ischemic heart disease*, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:

A. Sign-or symptom-limited exercise. . . .

B. Three separate ischemic episodes. . . . .

C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease,

1. Ischemic heart disease with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment.

2. Coronary artery disease with angiographic evidence with 50 percent or more narrowing of a nonbypassed left main coronary artery.

3. Very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

The Commissioner states that "[i]t is doubtful Plaintiff even qualifies under the initial listing criteria that requires angina or restrictions consistent with §§ 4.00E3-4.00E7." Rec. doc. 12 at 7. The Commissioner concedes that Abed satisfies the second element. Id. at 8. It denies that he satisfies the third elements. The ALJ stated that:

> While claimant has an occlusion of approximately 50 percent in a left coronary artery, the evidence fails to show that his cardiac impairment produces marked limitations of activities or complaints of fatigue with customary activities. To the contrary, the claimant testified that he walked three blocks to the hearing office after parking his car and customarily walks ½ of a mile per day.

R. 12.

Abed testified at the hearing that: (a) he walked a half mile a day at his own pace by himself (R. 22, 30 and 36); (b) sometimes he could do it without taking a rest (R. 36); (c) sometimes he became short of breath "and my chest like want to explode. . . .:" (R. 29); (d) when this occurred he

---

has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

1. Angiographic evidence showing:

    a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
    b. 70 percent or more narrowing of another nonbypassed coronary artery; or
    c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
    d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
    e. 70 percent or more narrowing of a bypass graft vessel; and

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

had to stand for a few minutes and then resume walking (R. 29-30); (e) he experienced shortness of breath when he climbed steps (R. 30); (f) with Simcor and Plavix, his heart situation was relatively stable (R. 30); (g) he returned to his Ochsner cardiologist every three months (R. 30); and (h) a stress test was scheduled a month after the hearing (R. 31). During a typical day Abend spent time with his grandchildren and friends. R. 36. Sometimes he did light housekeeping. R. 37. He cooked. R. 37. On October 19, 2007, Abed reported to Dr. Mandich that: (a) he walked about ½ mile every day and afterward felt somewhat tired and out of breath; and (b) he had no leg cramps but had some aching in his left hip and lower buttock with long walking, and prolonged sitting and standing. R. 219 and 223.ABed ambulated without difficulty and without a limp or the use of a cane (R. 221); and (b) his muscle bulk, tone and strength were preserved in all four extremities (R. 222).

Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson 91 S.Ct. 1420 at 1427. Abed's testimony at the hearing and the report by Dr. Mandich are substantial evidence to support the ALJ's conclusion. This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 12) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 11) be DENIED.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 28th day of September, 2009.

**SALLY SHUSHAN**
**United States Magistrate Judge**